**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

MEGAN E. LEWIS,

     Petitioner,

v.                                                                          Case No. 8:25-cv-2395-WFJ-AAS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____/

## ORDER

Megan E. Lewis, a Florida prisoner, initiated this action by filing a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent filed a response opposing the petition. (Doc. 13). Although afforded the opportunity, Ms. Lewis did not submit a reply. After careful review, the petition is **DENIED**.

## I.    Background

On the evening of September 7, 2017, Ms. Lewis murdered her boyfriend by shooting him in the head. (Doc. 14-2, Ex. 7, at 569, 631-32). At the time, the two shared a house in St. Petersburg, Florida. (*Id.* at 442, 787). The boyfriend, Craig Cutson, worked as a welder; Ms. Lewis was "pursuing . . . a degree in nursing." (*Id.* at 545, 791). On the day of the murder, Ms. Lewis stayed home while Mr. Cutson worked. (*Id.* at 762). She drank vodka "[t]hroughout the day," did chores around the house, and accepted delivery of a "zero gravity" bed. (*Id.* at 540, 762, 764, 766). When Mr. Cutson got home, he was "upset," and he poured himself a bourbon. (*Id.* at 545, 549, 768). The two argued over Ms.

1

Lewis "not being productive during the day." (*Id.* at 547). Mr. Cutson began to mow the lawn, and Ms. Lewis took a nap on the porch. (*Id.* at 773-74).

After waking from her nap, Ms. Lewis went inside and entered the bedroom. (*Id.* at 774-75). Mr. Cutson was on the bed. (*Id.* at 550). He began to talk about "the height" of the bed in "a critical fashion." (*Id.* at 778). Ms. Lewis retrieved a revolver, one of several guns Mr. Cutson kept in the bedroom. (*Id.* at 493-94, 551-52). She told law enforcement what happened next: "It was just kind of like, F*ck you, Craig, and then it was like, sh*t, it went off." (*Id.* at 546). According to Ms. Lewis, there was no "physical fighting" or "struggl[e]." (*Id.* at 548-49). Mr. Cutson died of a single gunshot wound to the forehead. (*Id.* at 601, 631). The State's blood spatter expert testified that Mr. Cutson was lying "on his back" on the bed when Ms. Lewis shot him. (*Id.* at 734).

Ms. Lewis called 911 to report that she had "shot [her] boyfriend." (*Id.* at 442). The operator asked, "Was this intentional?" (*Id.* at 444-45). She said, "No, we were messing around . . . . and I hit the f*cking gun." (*Id.* at 445). She then added, "[W]e were fighting." (*Id.*) When law enforcement arrived, Ms. Lewis "spontaneously stated . . . that she just grabbed the gun and it went off." (*Id.* at 432). After her interview with law enforcement, Ms. Lewis was arrested for second-degree murder. (*Id.*, Ex. 3). On the way to the jail, she said that the "next time she accidentally shoots somebody she won't call the cops." (*Id.*, Ex. 7, at 437).

The case went to trial. Ms. Lewis argued that the shooting was "a tragic accident" and "yet another reminder of the importance of safe and responsible gun ownership." (*Id.* at 415). According to her, Mr. Cutson was "telling [her] about" the revolver when he

"cocked the hammer" and handed it to her. (*Id.* at 777). The gun then "went off," and she "knew something was terribly, terribly wrong." (*Id.* at 779). The jury found Ms. Lewis guilty of second-degree murder, and the trial court sentenced her to thirty years in prison. (*Id.* at 905; Doc. 14-2, Ex. 14). Ms. Lewis's direct appeal was unsuccessful, as were her efforts to seek postconviction relief under Florida Rule of Criminal Procedure 3.850 and Florida Rule of Appellate Procedure 9.141(d). (Doc. 14-3, Exs. 27, 29, 32, 34, 37, 40, 45). This federal habeas petition followed. (Doc. 1).

## II.    Standards of Review

### A.    AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

### B.    Ineffective Assistance of Counsel

Ms. Lewis alleges ineffective assistance of counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*.

Ms. Lewis must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Ms. Lewis must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation and citations omitted); *see also Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is governed by the deferential *Strickland* test—through the lens of AEDPA deference, the resulting standard of review is doubly deferential."). "The question [on federal habeas review of an ineffective-assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

### III.    Discussion

#### A.    Ground One—Exclusion of Toxicologist's Testimony

Ms. Lewis argues that the trial court violated her right to due process by excluding testimony from Tara Catlin, a forensic toxicologist. (Doc. 1 at 4). Ms. Catlin would have testified that the victim, Mr. Cutson, "had a blood alcohol level of .141 at the time of death, which could have caused a lack of critical judgment." (*Id.*) During a break in the trial, defense counsel proffered Ms. Catlin's testimony. (Doc. 14-2, Ex. 7, at 807-12). Counsel argued that evidence of Mr. Cutson's intoxication would explain why he "recklessly" handed Ms. Lewis a loaded, cocked revolver. (*Id.* at 817). This, in turn, would bolster Ms. Lewis's defense that the shooting was an accident. (*Id.*) The trial court excluded the testimony, explaining that it had "not heard anything [showing] that [Ms. Catlin's testimony] should be admissible." (*Id.* at 817-18). Ms. Lewis challenged this ruling on appeal, and the appellate court affirmed in an unexplained decision. (*Id.*, Exs. 17, 19, 20, 22).

Ms. Lewis is not entitled to relief because she cannot show that the exclusion of Ms. Catlin's testimony caused "actual prejudice." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). "On collateral review, a federal constitutional error is harmless unless there is actual prejudice, meaning that the error had a substantial and injurious effect or influence on the jury's verdict." *Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012) (emphasis omitted). "To show prejudice under *Brecht*, there must be more than a reasonable possibility that the error contributed to the conviction." *Mason v. Allen*, 605 F.3d 1114, 1123 (11th Cir. 2010). An error "is likely to be harmless under the *Brecht*

standard where there is significant corroborating evidence or where other evidence of guilt is overwhelming." *Mansfield*, 679 F.3d at 1313. "The standard for granting habeas relief under *Brecht* is extremely demanding." *Al-Amin v. Warden Ga. Dep't of Corr.*, 932 F.3d 1291, 1303 (11th Cir. 2019).

Ms. Lewis cannot show "more than a reasonable possibility" that the outcome of her trial would have been different had the jury learned that Mr. Cutson's blood alcohol level was .141. *Mansfield*, 679 F.3d at 1313. At trial, both sides agreed that Ms. Lewis shot Mr. Cutson in the head. (Doc. 14-2, Ex. 7, at 409-10, 415-16). The question for the jury was this: Did Ms. Lewis accidentally shoot Mr. Cutson, or did she fire the gun with "a depraved mind regardless of human life"?[1] Fla. Stat. § 782.04(2). The answer to that question did not depend on whether Mr. Cutson drunkenly handed Ms. Lewis the gun. Even if he did that, she still could have shot him with the intent required for second-degree murder. Indeed, the prosecution presented "significant corroborating evidence" of Ms. Lewis's depraved mind. *Mansfield*, 679 F.3d at 1313. She told the 911 operator that she and Mr. Cutson had been "fighting." (Doc. 14-2, Ex. 7, at 445). And she gave law enforcement the following account of the shooting: "It was just kind of like, F*ck you, Craig, and then it was like, sh*t, it went off." (*Id.* at 546). Regardless of whether Mr. Cutson handed Ms. Lewis the gun, the jury had ample evidence from which to conclude that the shooting was not an accident. *See Bogart v. State*, 114 So. 3d 316, 318 (Fla. 4th DCA 2013)

---

[1] An act "demonstrat[es] a depraved mind if it is an act or series of acts that: (1) a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another, and (2) is done from ill will, hatred, spite, or an evil intent, and (3) is of such a nature that the act itself indicates an indifference to human life." *Light v. State*, 841 So. 2d 623, 625 (Fla. 2d DCA 2003).

(evidence that defendant and victim had "got[ten] in a fight, an argument" was "relevant to the element of ill will or depraved mind in second-degree murder").

Moreover, the jury did not learn Mr. Cutson's blood alcohol level, but it did hear that he had poured himself a bourbon after arriving home from work. (Doc. 14-2, Ex. 7, at 549). As a result, counsel was able to argue in closing that Mr. Cutson "handed [Ms. Lewis] the gun, cocked it," and that he did so after "pour[ing] a bourbon." (*Id.* at 855). Based on this (and other) evidence, counsel urged the jury to "[f]ind that it was an accident." (*Id.* at 865). Because Ms. Lewis "made the very point that [she] claims [she] was restricted from making," any error in excluding Ms. Catlin's testimony was harmless under *Brecht*. *Roberts v. Dixon*, No. 1:21-cv-152-AW-MJF, 2023 WL 4317043, at *11 (N.D. Fla. Apr. 7, 2023), *adopted by* 2023 WL 4317271 (N.D. Fla. July 3, 2023).

### B.    Ground Three—Failure to Cite "Favorable Case Law" on Appeal[2]

On direct appeal, Ms. Lewis's counsel argued that the trial court "abused its discretion by precluding the testimony of forensic toxicologist Tara Catlin." (Doc. 14-2, Ex. 17, at 12). In her § 2254 petition, Ms. Lewis faults counsel for failing to alert the appellate court to "favorable case law." (Doc. 1-1 at 13). She raised this claim in state court by filing a petition alleging ineffective assistance of appellate counsel. (Doc. 14-3, Ex. 25, at 9-10). There, Ms. Lewis argued that counsel should have cited *Gensler v. State*, 868 So. 2d 557 (Fla. 3d DCA 2004). (*Id.*) In *Gensler*, the Third District Court of Appeal reversed a vehicular-homicide conviction. It held that "[t]he trial court abused its discretion in

---

[2] Ground Three is related to Ground One. The Court thus addresses Ground Three before turning to Ground Two.

8

excluding evidence of the deceased's crack cocaine and alcohol intoxication on the night of the accident," because "[t]his information [was] relevant to the defendant's version of the events and explanation of the accident, and tend[ed] to demonstrate that the defendant may not be at fault for causing the accident." 868 So. 2d at 559. Ms. Lewis argued that there was a "reasonable probability the outcome [of her appeal] would have been different but for counsel's omission of *Gensler*."[3] (Doc. 14-3, Ex. 25, at 10).

The appellate court rejected this claim in an unexplained decision. (*Id.*, Ex. 27). Thus, Ms. Lewis must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. She cannot do so. Her assertion of ineffective assistance rests on the mistaken premise that counsel failed to cite *Gensler* on direct appeal. In fact, counsel cited *Gensler* six times in his reply brief. (Doc. 14-2, Ex. 19, at 7-11). He described the facts, recited the relevant holding, and argued that it supported Ms. Lewis's position that the toxicologist's testimony "was relevant and the trial court erred by excluding it." (*Id.* at 7-8). Ms. Lewis "cannot demonstrate deficient performance when counsel did what [she] wanted him to do."[4] *Owens v. Sec'y, Dep't of Corr.*, No. 5:14-cv-266-RH-GRJ, 2017

---

[3] Ms. Lewis also claimed that counsel omitted "similar cases," but she did not identify any decision other than *Gensler* that would have supported her position on appeal. (Doc. 14-3, Ex. 25, at 9-10).

[4] In her § 2254 petition, Ms. Lewis faults appellate counsel for "using only state law" and failing to "put the state court on notice of any federal [constitutional] violations." (Doc. 1-1 at 14-15). But Ms. Lewis did not make this argument in her petition alleging ineffective assistance of appellate counsel. (Doc. 14-3, Ex. 25, at 9-10). Her newly minted allegations thus cannot be considered on federal habeas review. "[A] review of a state court adjudication on the merits in light of allegations not presented to the state court—for example, by examining additional facts or claims presented for the first time in a petitioner's federal habeas petition—would insufficiently respect the historic and still vital relation of mutual respect and common purpose existing between the States and the federal courts." *Borden v. Allen*, 646 F.3d 785, 816 (11th Cir. 2011). Accordingly, this Court "do[es] not consider [Ms. Lewis's] supplemental allegations . . . when reviewing the reasonableness of the state court's resolution of this claim, which was based on the allegations before it." *Powell v. Allen*, 602 F.3d 1263, 1273 n.8 (11th Cir. 2010). Regardless, Ms. Lewis fails to

WL 9440396, at *8 (N.D. Fla. Apr. 18, 2017), *adopted by* 2017 WL 2861651 (N.D. Fla. July 5, 2017).

### C.    Ground Two—Failure to Challenge Exclusion of EMT's Testimony

Ms. Lewis faults appellate counsel for failing to challenge the exclusion of testimony from Donald Kmiotek, an EMT who responded to the scene of the shooting. (Doc. 1 at 5). Mr. Kmiotek would have testified that he overheard a "woman" telling "one of the officers" on scene that "she had accidently shot [the victim] or the gun accidently discharged or something along those lines." (Doc. 14-2, Ex. 7, at 802). After hearing a proffer of this testimony, the trial court excluded it on hearsay grounds. (*Id.* at 806). The court explained that it could not "find . . . an exception to the hearsay rule that would apply," and it expressed "concern[]" about the "reliability" of the testimony because Mr. Kmiotek could not "remember clearly what was being said other than the word 'accidentally' got used." (*Id.*) Ms. Lewis now contends that counsel should have challenged this ruling on direct appeal. (Doc. 1-1 at 12). According to her, counsel could have argued that the statement qualified for the "excited utterance" exception to the hearsay rule. (*Id.*)

The appellate court rejected this ineffective-assistance claim without explanation. (Doc. 14-3, Ex. 27). Once again, Ms. Lewis must show that "there was no reasonable basis for" that decision. *Richter*, 562 U.S. at 98. She cannot do so. A fairminded jurist could conclude that the "omitted claim" had no "reasonable probability of success on appeal" because the exclusion of Mr. Kmiotek's testimony was harmless. *Joiner v. United States*,

---

establish a reasonable probability that the outcome of her appeal would have been different had counsel cited federal decisions.

103 F.3d 961, 963 (11th Cir. 1997); *see also Boland v. Sec'y, Dep't of Corr.*, 278 F. App'x 876, 879 (11th Cir. 2008) (prejudice inquiry "requires that we determine whether the state court would have applied harmless error review"). And with no reasonable probability of success on appeal, Ms. Lewis cannot show prejudice from the omission of her claim.

A Florida appellate court "will not reverse where an error is harmless." *Peret v. State*, 301 So. 3d 437, 439 (Fla. 2d DCA 2020). The test for harmlessness is whether there is a "reasonable possibility that excluding [the] evidence . . . contributed to [the] conviction." *Mizell v. State*, 350 So. 3d 97, 102 (Fla. 1st DCA 2022). Here, a fairminded jurist could find that any alleged error was harmless because Mr. Kmiotek's testimony was "cumulative in nature." *Prado v. State*, 372 So. 3d 272, 275 (Fla. 4th DCA 2023); *see also Andrews v. State*, 82 So. 3d 979, 984 (Fla. 1st DCA 2011) (finding harmless error where challenged testimony was "cumulative").

According to Ms. Lewis, the excluded testimony was important because it showed that shortly after the incident, she described the shooting as "accidental." (Doc. 14-3, Ex. 25, at 8-9). But the jury learned this even without Mr. Kmiotek's testimony. During the 911 call, Ms. Lewis reported that she had "shot [her] boyfriend." (Doc. 14-2, Ex. 7, at 442). The operator asked, "Was this intentional?" (*Id.* at 444-45). She said, "No, we were messing around . . . . and I hit the f*cking gun." (*Id.* at 445). Likewise, when law enforcement arrived, Ms. Lewis "spontaneously stated . . . that she just grabbed the gun and it went off"—a statement that suggests an accidental shooting. (*Id.* at 432). Later, during her interrogation, she said, "I called you guys because I accidentally shot my

11

boyfriend." (*Id.* at 566). Finally, on the way to the jail, Ms. Lewis said that the "next time she accidentally shoots somebody she won't call the cops." (*Id.* at 437).

On this record, a fairminded jurist could conclude that any error in excluding Mr. Kmiotek's testimony "was harmless because [it] was cumulative of other evidence presented to the jury." *Wallace v. State*, 766 So. 2d 364, 372 (Fla. 3d DCA 2000). Thus, the appellate court could reasonably have found that Ms. Lewis "was not prejudiced when counsel failed to argue the [evidentiary] issue on direct appeal." *Boland*, 278 F. App'x at 880.

### D.      Ground Four—Failure to Raise *Batson* Challenge

Lastly, Ms. Lewis argues that trial counsel was ineffective for not "object[ing] to an all-male jury, which constitut[ed] gender bias under" *Batson*.[5] (Doc. 1-1 at 15). Ms. Lewis alleges no additional facts in support of this claim. (*Id.*) The jury in her case consisted of six men and one female alternate. (Doc. 14-2, Ex. 7, at 341, 343-44). The prosecution used four out of five peremptory challenges on female venire members; Ms. Lewis's counsel used four out of six peremptory challenges on female venire members. (*Id.* at 332-41). Ms. Lewis asserts, without elaboration, that counsel should have "raise[d] a *Batson* challenge during *voir dire*." (Doc. 1-1 at 15).

Even under *de novo* review, this claim fails. *Batson* held that the Fourteenth Amendment forbids a prosecutor from striking potential jurors solely on account of their race. 476 U.S. at 86. In *J.E.B. v. Alabama*, the Supreme Court extended *Batson* to

---

[5] *Batson v. Kentucky*, 476 U.S. 79 (1986).

peremptory challenges based on gender. 511 U.S. 127, 129 (1994). A successful *Batson* challenge requires a defendant to "establish a *prima facie* case by producing evidence sufficient to support the inference that the prosecutor exercised peremptory challenges on the basis of race [or sex]." *King v. Warden, Ga. Diagnostic Prison*, 69 F.4th 856, 868 (11th Cir. 2023). "[T]he mere fact of striking a juror or a set of jurors of a particular [gender] does not necessarily create an inference of [gender] discrimination." *Cent. Ala. Fair Hous. Ctr., Inc. v. Lowder Realty Co.*, 236 F.3d 629, 636 (11th Cir. 2000). "The number of persons of a particular [gender] struck takes on meaning only when coupled with other information such as the [gender] composition of the venire, the [gender] of others struck, or the *voir dire* answers of those who were struck compared to the answers of those who were not struck." *Id.* at 636-37.

Ms. Lewis argues that counsel should have "object[ed] to an all-male jury."  (Doc. 1-1 at 15). But a successful *Batson* challenge requires "more than the bare fact of the removal of certain venire persons and the absence of an obvious valid reason for the removal."  *United States v. Allison*, 908 F.2d 1531, 1538 (11th Cir. 1990). Other than the fact that her jury consisted of six men and one female alternate, Ms. Lewis cites no evidence "that the prosecutor exercised peremptory challenges on the basis of" sex. *King*, 69 F.4th at 868. Indeed, she does not even identify which peremptory strikes were the result of gender discrimination, nor does she explain how any particular strike was motivated by gender. *See Wooten v. Lewis*, No. 1:19-cv-46-CDP, 2022 WL 558085, at *8 (E.D. Mo. Feb. 24, 2022) ("Because [petitioner] does not identify which jurors were struck solely on account of their gender, nor make a *prima facie* showing of discrimination, he fails to show

13

that any challenge to the State's use of peremptory strikes would have been successful."). Absent any evidence of discriminatory motive, Ms. Lewis fails to rebut the "strong presumption" that counsel acted "reasonabl[y]" in forgoing a *Batson* challenge. *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000).

Ms. Lewis also fails to establish prejudice. "Although a successful *Batson* claim requires automatic reversal on direct appeal, the same is not true on collateral review." *Price v. Sec'y, Fla. Dep't of Corr.*, 548 F. App'x 573, 576 (11th Cir. 2013) (citation omitted). "[A] petitioner seeking habeas relief on a claim that his trial counsel rendered ineffective assistance in failing to raise an equal protection objection during *voir dire* cannot succeed on that claim unless he can demonstrate that the outcome of his trial was affected by the equal protection violation." *Eagle v. Linahan*, 279 F.3d 926, 943 n.22 (11th Cir. 2001) (citing *Jackson v. Herring*, 42 F.3d 1350, 1362 (11th Cir. 1995)). Therefore, Ms. Lewis must show that the inclusion of more female jurors "would have carried a reasonable probability of changing the outcome of the trial." *Sneed v. Fla. Dep't of Corr.*, 496 F. App'x 20, 27 (11th Cir. 2012); *see also Curry v. Sec'y, Fla. Dep't of Corr.*, No. 3:16-cv-1487-TJC-MCR, 2019 WL 5549142, at *16 (M.D. Fla. Oct. 28, 2019) (no prejudice from failure to raise *Batson* challenge because petitioner did not show "a reasonable probability that had [a female juror] served on his jury, the outcome of his trial would have been different"); *Robinson v. Sec'y, Dep't of Corr.*, No. 5:10-cv-193-RS-GRJ, 2013 WL 5345348, at *13 (N.D. Fla. Sept. 24, 2013) ("To establish prejudice for counsel's failure to assert a *Batson* challenge to the peremptory strike, Petitioner must show that, had counsel objected, his challenge would have been successful and the inclusion of the juror

14

on his jury would have carried a reasonable probability of changing the outcome of the trial.").

Ms. Lewis fails to establish *Strickland* prejudice. There is no evidence "that [a female] juror would have seen the evidence any differently than the [male] jurors seated on the jury." *Price*, 548 F. App'x at 576. Gender did not play a significant role in the trial. As explained above, the central question for the jury was whether Ms. Lewis accidentally shot Mr. Cutson. Ms. Lewis offers no reason to think that gender influenced the jury's consideration of this issue.[6] To be sure, the victim in this case was a man, and Ms. Lewis is a woman. "But that alone does not establish that there is a reasonable probability of a different result sufficient to undermine . . . confidence in the outcome of this case." *Id.*; *see also Tyler v. Sec'y, Dep't of Corr.*, No. 2:24-cv-363-JLB-NPM, 2025 WL 2604534, at *11 (M.D. Fla. Sept. 9, 2025) (no prejudice from failure to raise *Batson* claim even though "the victim in this case was Hispanic and Petitioner is black," because "race did not play a significant role at trial"). Ms. Lewis's "only argument [appears to be] that a more [gender] balanced jury would have been less likely to convict [her]." *Wilson v. Sec'y, Fla. Dep't of Corr.*, 786 F. App'x 878, 881 (11th Cir. 2019). "This conclusory argument falls short of showing a substantial likelihood of a different result." *Id.*

## IV. Conclusion

Accordingly, the Court **ORDERS**:

---

[6] Ms. Lewis did not claim self-defense, and she told law enforcement that there was no "physical fighting" or "struggl[e]" before the shooting. (Doc. 14-2, Ex. 7, at 548-49). Moreover, Ms. Lewis testified at trial that she "loved [Mr. Cutson] very much," and that he loved her. (*Id.* at 787).

15

1. Ms. Lewis's petition (Doc. 1) is **DENIED**.

2. The **CLERK** is directed to enter judgment against Ms. Lewis and to **CLOSE** this case.

3. Ms. Lewis is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of her petition. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, Ms. Lewis must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues she seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Ms. Lewis has not made the requisite showing. Because Ms. Lewis is not entitled to a certificate of appealability, she is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on March 13, 2026.

_____
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

16